**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**

—————————————————————————X

DANIEL MELLO, VALENTINA GONZALEZ,
ELKIN GARCIA, MATIAS CORDOBA, JEAN
GONZALEZ and ALEJANDRA GOMEZ
                    Plaintiffs,
      v.

UNITED PRODUCTION WORKERS UNION,
  LOCAL 17-18, a Labor Organization and
  DOUGLAS ISAACSON,

                Defendants.

—————————————————————————X

**CIVIL ACTION NO:** <u>1:20-CV-05035</u>

**VERIFIED COMPLAINT FOR
PRELIMINARY INJUNCTION AND
TEMPORARY RESTRAINING
ORDER**

**JURY TRIAL DEMANDED**

## COMPLAINT

This is an action pursuant to Title I of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA) and under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. The LMRDA provides a "Bill of Rights" for labor union members, including various protections for members involved in union elections. One of the primary goals of the LMRDA is to guarantee "'free and democratic' union elections modeled on 'political elections in this country.'" *Local 3489, United Steelworkers of America v. Usery,* 429 U.S. 305, 309 (1977).

Plaintiffs are members of a union that has refused, in violation of federal law, to hold an election for leadership for ***18 years***. Plaintiffs sought to remedy this situation by demanding an election at which they could challenge the current leadership of their union, as is their right under federal law. Defendant first attempted to "buy off" Plaintiffs to avoid any challenge to the current leadership. When that failed, Defendant launched an unlawful effort to expel Plaintiffs from the

union altogether, using supposedly anti-Semitic comments as a sham basis for the expulsion. The real basis for the expulsion is to shield the current union leadership from a fair election in violation of the LMRDA and other federal laws.

## PARTIES

1. Plaintiff Daniel Mello ("Mello") has been a member of United Production Workers Union, Local 17-18 ("Local 17-18" or "Union") for over 18 years residing at 164 West 20th Street, Apartment F2, Bayonne, NY 07002.

2. Plaintiff Valentina Gonzalez ("Gonzalez") has been a member of Local 17-18 for over 19 years residing at 14 West 15th Street, Apartment 2R, Bayonne, NY 07002.

3. Plaintiff Elkin Garcia ("Garcia") has been a member of Local 17-18 for over 19 years residing at 299 Avenue A, Bayonne, NY 07002.

4. Plaintiff Matias Cordoba ("Cordoba") has been a member of Local 17-18 for over 18 years residing at 17 East 31 Street, Bayonne, NY 07002.

5. Plaintiff Jean Gonzalez is a member of Local 17-18 who supports the candidacy of Mello, Gonzalez, Garcia and Cordoba and wants to campaign for their election.

6. Plaintiff Alejandra Gomez is a member of Local 17-18 who supports the candidacy of Mello, Gonzalez, Garcia and Cordoba and wants to campaign for their election.

7. Defendant Local 17-18 is a labor organization that acts as both a local and parent union. Local 17-18 is located at 735 Wythe Avenue, Brooklyn NY 11249;

8. Defendant Douglas Isaacson is President of Local 17-18 for at least the last 18 years.

## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 28 USC § 1331 as this is a civil action arising under the Constitution and laws of the United States and other statutes, as well as under any other federal statute or law that will assist Plaintiffs in the prosecution of the defendants.

10. Venue is proper in the Eastern District of New York under 28 USC § 1391(b) as the Union maintains it business address in this District and all events and omissions giving rise to the claims herein occurred in this District.

## BACKGROUND

### The Union Tried to Bribe Plaintiffs When They Challenged

### Its 18-Year Failure to Hold Elections

11. Defendant Union operates under a Constitution and Bylaws that act as a contract between the union administration and the membership. (See Ex.1)

12. On or about May 19, 2019, Plaintiffs Mello, Garcia, and Cordoba met with Defendant Douglas Isaacson ("Isaacson") President of Local 17-18 and the Union's attorney Joel Spivak to request that the Union hold an election for its officers, specifically to select a President, a Vice-President, a Recording Secretary, a Treasurer and three members of the Union's executive board. At that time, no election had been held by the Union for at least 18 years.

13. Rather than schedule an election, as required by law, Isaacson responded on the same day to offer Plaintiff Mello, Garcia and Cordoba staff positions inside the Union in place of the election. Plaintiffs did not accept this bribe, determined instead to vindicate the rights of Union members.

14. On or about June 5, 2019, President Isaacson sent the Union's Recording Secretary Luis Moriano ("Moriano"), Business Agent Francisco Jarra and Business Agent Julian Marquez ("Marquez") all agents of Local 17-18, to meet with Plaintiffs Mello, Garcia and Cordoba to offer

each $20,000.00 to stop pursuing an election at Local 17-18. Again, Plaintiffs did not accept the proffered bribe.

15. On or about June 11, 2019 Business Agent Marquez met with Plaintiff Mello to sweeten the deal, offering him a no show union staff job paying $800 per week at Local 17-18 in exchange for ceasing to ask for an election at the union. Plaintiff Mello did not accept this bribe.

16. On or about August 5, 2019, Plaintiffs Mello, Garcia and Cordoba filed a written complaint with the Office of Labor Management Statistics "OLMS" of the United States Department of Labor ("DOL") complaining that Defendant has not held union officer election for at least the last 18 (eighteen years) in violation of the LMRDA.

17. On September 16, 2019 Defendant entered into a voluntary compliance agreement with OLMS to hold new nominations, elections and installations for seven union officers including the offices of President, Vice President, Recording Secretary, Treasurer and three Executive Board positions on or before May 22, 2020. (See Ex. 3)

18. On or about October 2019 Plaintiffs began campaigning for upcoming election to be held before May 22, 2020 with Mello running for President, Gonzalez running for Vice President, Cordoba running for Recording Secretary, and Garcia running for Treasurer.

**The Union Then Instituted a "Show Trial" to Expel Plaintiffs from the Union**

19. The Union membership is overwhelming of Hispanic background. The Union President and certain other officers are Hasidic Jews, as are the owners of the 52 factories and warehouses with whom Local 17-18 bargains with. In addition to their community relationships, there are key historical relationships between the Union leadership and the employers representatives. For a number of years the Executive Director of the Tri-State Commercial Association Ltd., which is the employer association with which Local 17-18 bargains on behalf of

its members, was also the ex-President of Local 17-18, David Ganz. Complaining of this cozy relationship during the election campaign, Plaintiffs referred in some private text messages with their supporters to the current leadership of the Union as "Jews" and complained that the current leadership runs the Union to benefit the interests of the Jewish owners and employers, rather than its Hispanic members. Plaintiffs had no malicious intent, and these statements were neither intended to be, nor were anti-Semitic. Plaintiffs intent was to emphasize that the current leadership is not pursuing the best interests of the membership. Plaintiffs have since apologized for that campaign language, which was in any case, protected by both the LMRDA and the First Amendment.

20. Defendant has sought, however, to use these statements as an excuse to expel Plaintiffs from the Union, thus eliminating the challenge to the current leadership. On information and belief, Defendant has never in its over 30 year history expelled any members from the union before Plaintiffs began their campaign to run for union office.

21. On or about February 10, 2020 Plaintiffs received unsigned internal union discipline charges, falsely charging Plaintiffs with "circulating literature in connection with the upcoming union election that attacks the incumbent leadership because, according to the literature, they are Jewish. . . . [stating] that the leadership of Local 17-18 has taken actions with respect to employers because the leaders and employers were all Jewish." The unsigned charge falsely alleges that Plaintiff's campaign literature are anti-Semitic and that the Plaintiffs, all four candidates for office, are charged with violating Article XI, Section 2 of the Local 17-18 Bylaws for disciplining members who abuse other members.

22. Defendant thereafter constituted an unlawful "show trial" designed to expel Plaintiffs from the Union on the bases of these supposed anti-Semitic statements. Defendant hired an attorney, Arthur Schwartz ("Schwartz"), to act as special counsel to conduct its election of officers *and* to act as counsel in the trial against the Plaintiffs, candidates for office. Mr. Schwartz is biased and

conflicted in his two roles. On information and belief, Mr. Schwartz reports to, and is beholden to, the current Union leadership. On information and belief, if the current leadership is elected, Mr. Schwartz expects to be further retained by the Union or its current leadership.

23. Defendant, with the assistance of the ostensibly neutral Mr. Schwartz, then appointed a five-person Trial Committee *chosen by the current leadership* to decide the charges against Plaintiffs. Defendant and Mr. Schwartz refused to permit Plaintiffs to appoint any members to this Trial Committee. The Union's Constitution and Bylaws requires at least two members of the trial committee to be elected by the members present at the meeting. (Ex. 1) Defendant refused to comply with this rule.

24. Plaintiffs filed two of their own discipline charges on February 18, 2020 against President Isaacson and Business Agent Marquez, but no Trial Committee was chosen and to date the Union has not processed those charges.

25. On or about February 21, 2020, Plaintiffs were notified that the trial would be held on March 3, 2020. On or about or about February 27, 2020 Plaintiffs objected in writing to Defendant that the Trial Committee was convened unconstitutionally, that it was unlawful to proceed on an unsigned complaint and demanding any supporting evidence in connection with the discipline charges so that Plaintiffs could properly prepare a defense.

26. On Saturday, February 29, 2020 Defendant responded by attaching evidence of "Facebook" and "WhatsApp" posts from private chat rooms as evidence and provided a copy of the signed complaint from the three accusers. Waiting until 48 hours prior to the trial to produce and present a signed complaint was improper under the Constitution and Bylaws, as Plaintiffs explained in objections served on March 2, 2020.

27. On March 2, the day before the trial. Plaintiffs explained in writing that it was unlawful to present evidence 48 hours prior to the trial, that they had just received the signed charges

48 hours prior to the trial and needed more time to prepare a defense, that a lawyer's (Schwartz) involvement in the trial was not supported by the Union constitution, that the trial committee had not responded to their objections, that the trial committee was not convened pursuant to the constitution and bylaws, that the time and place of the trial was impracticable, and asking for Recording Secretary Moreano to be present as a witness at the trial to explain how he processed discipline charges. These objections and requests were all denied by Schwartz.

28. On March 3, 2020 the "show trial" began. Of the five person trial committee only three members appeared: Alonzo, Alcalla and Diaz. Of the three accusers in support of the charges only one appeared. Plaintiffs were not permitted to confront or cross-examine their accusers. The current leadership of the Union compared Plaintiffs to "Adolf Hitler" in flyers distributed during the "trial." Plaintiffs apologized at the trial for any offense they might have caused, but the apology was ignored. A full transcript of the Spanish-language portions of the trial were not prepared.

29. On or about March 9, 2020 the trial committee presented Plaintiffs with a decision signed by only three members of the five member trial committee recommending expulsion for Plaintiffs. The Union constitution requires any such decision to be presented and read to the membership at a special meeting. Defendant refused to comply with this requirement.

30. On or about April 2, 2020, Plaintiffs timely submitted their appeal of the trial committee decision to Local 17-18's Executive Board—which consists of the current Union leadership. They did not recuse themselves, despite their direct interest in the matter. In their appeal, Plaintiffs point out that the Executive Board is missing a member and cannot be properly convened, that they never received any reasoning from the trial board, that Plaintiffs were never given copies of any exhibits from the trial, that Defendant's attorney Schwartz added documents into evidence without affording Plaintiffs an opportunity to review the evidence, that Moreano failed to appear as a witness, that the allegations in the trial committee decision are different from

the allegations in the complaint sent to the Plaintiffs, that Plaintiffs could not confront their accusers, that all the offensive posts are in Spanish and that they never heard any witness say that they had actually read their posts or translated it.  In conclusion, Plaintiffs wrote: "This trial did not protect our substantive rights and did not ensure that we had reasonable notice, a fair hearing and a decision based on the evidence."

31.  On or about July 15, 2020 Defendant's Executive Board--—consisting of the Union's leadership that is seeking to expel Plaintiffs—convened to hear Plaintiff's appeal.  Plaintiffs were told that their statement to the Executive Board had to be in English and no Spanish language translator was available.  Plaintiffs again verbally apologized for the language they used, explained that they were not aware of the offensive language used and explained that they will never use any such language again.  The Executive Board, not surprisingly, denied Plaintiff's appeal.


**The Union Is Now Violating Its Own Constitution and By-laws to Complete the Expulsion of Plaintiffs on the Eve of the Scheduled Elections.**

32.  On or about September 28, 2020, Schwartz wrote to the Plaintiffs that instead of the membership meeting required by the Union constitution and by-laws to vote on the expulsion, a vote would be taken by the membership by mail in light of Covid 19.  This process has prevented the membership from hearing Plaintiffs' speak in their own defense.  Schwartz represented repeatedly in writing that the Defendant would at least include Plaintiff's last appeal letter submitted to the Executive Board on April 2, 2020 and a one page statement from the accusers.

33.  On or about October 2, 2020 Defendant mailed expulsion ballots out to the whole membership.  Defendant failed, however. to include any statement from Plaintiffs in its mailing. Defendant's expulsion ballot mailing contained only a one page statement from Isaacson stating that Plaintiffs were accused of "circulating racist, anti-Semetic [sic]  (anti Jewish) literature in

connection with the upcoming union election…" and that the trial committee made a finding that Plaintiffs were "guilty of circulating and posting on Facebook and Whatsapp [sic] anti-semetic [sic] remarks… ." It was not until October 16, 2020 Plaintiff's realized that the expulsion ballot mailing did not include any mention of any defense made by the Plaintiffs. (Ex.2)

34. On or about October 16, 2020 Plaintiffs complained to Defendant about the expulsion ballot mailing missing any explanation of their defense. Defendant initially claimed that Plaintiff's appeal letter was included in the expulsion ballot mailing. Plaintiffs then presented Defendant with the fact that they had confirmed with over 25 members other members that Plaintiffs statements were excluded from the expulsion mailing. (Ex. 2) Schwartz refused to redo the expulsion ballot mailing without explaining the deficiency in the expulsion ballot mailing.

35. The expulsion ballot count is set for October 20, 2020—the day before the OLMS nomination meeting set for the upcoming election. The date is not a coincidence. Defendant has barred Plaintiffs from having an observer at the count.

36. Defendants are hoping that two-thirds of the received ballots will vote for the expulsion. Defendants' goal is to use the expulsion to render Defendants ineligible under the Union's Constitution and Bylaws to be nominated for the election and/or to hold office if elected. The election is set to conclude on December 14, 2020.

**FIRST CAUSES OF ACTION**

**DEFENDANT'S ACTIONS VIOLATE
THE LMRDA BILL OF RIGHTS OF MEMBER LABOR ORGANIZATIONS:
FREEDOM OF SPEECH AND ASSEMBLY
AND EQUAL RIGHTS**

37. Plaintiffs repeat the allegations contained in all paragraphs above.

38. Plaintiffs' election communications criticizing the current union President for his relationships with management, and lack of concern for the interest of Union members, is free

speech guaranteed by the LMRDA. Indeed, the right to criticize Union leadership is fundamentally critical to all the rights guaranteed by the LMRDA. This is especially true during an election. Seeking to expel Plaintiffs and thus eliminate their challenge to the Union leadership in the upcoming election is a violation of the LMRDA.

39. There has been no allegation by Defendant that Plaintiffs interfered in any way with Defendant's legal or contractual obligations or in violation of the "responsibility of every member toward the organization as an institution." Rather as part of the freedom of speech union member's enjoy is the right to criticize proper and honest management of Defendant's affairs.

40. Local 17-18 has already been found by the National Labor Relations Board to be "favored" by management in its decisions in *Maramont Corp.,* 317 NLRB 1035 (1995) and *KG Knitting Mills, Inc.,* 320 NLRB 374 (1995).

41. Defendant's violation of the LMRDA violates the free speech and equal protection rights of members who support Plaintiffs and seek to campaign for their election, to vote for them, and their participation in the affairs of the Union under the governance of their elected representatives, as well as Plaintiffs' own free speech and association and equal voting rights.

42. Jean Gonzalez and Alejandra Gomez's rights to vote for candidates of their choice will be irreparably harmed and their equal rights to participate in choosing who will represent them will be disenfranchised.

43. As a result of Defendants unlawful actions, Plaintiffs have suffered and will continue to suffer irreparable harms for which there is no adequate remedy at law.


## SECOND CAUSE OF ACTION

### DEFENDANT'S ACTIONS VIOLATE
### THE LMRDA BILL OF RIGHTS OF MEMBER LABOR ORGANIZATIONS:
### SAFEGUARDS AGAINST IMPROPER DISCIPLINARY ACTION

44. Plaintiffs repeat the allegations contained in all the paragraphs above.

45. Defendant's "show trial" and expulsion process violate Plaintiff's rights under the LMRDA. The selection of the trial committee, the conduct of the "trial," the failure to permit cross-examination of his accusers, and the decision of the "trial committee" all violated Plaintiffs' due process rights under the LMRDA and federal law.

46. The failure to hold special membership meetings at which the membership could decide the expulsion issues after hearing from Plaintiffs also violates the Union's own bylaws and constitution as well as the due process requirements of the LMRDA.

47. As a result of Defendants unlawful actions, Plaintiffs have suffered and will continue to suffer irreparable harms for which there is no adequate remedy at law.

## THIRD CAUSE OF ACTION

### SECTION 301 OF THE LMRA FOR
### ENFORCEMENT OF LABOR ORGANIZATION'S CONSTITUTION

48. Plaintiffs repeat the allegations contained in all the paragraphs above.

49. Under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185.

50. Union members have standing to enforce the terms of their union constitutions.

51. Defendants conduct, including the failure to hold an election for 18 years, the conduct of the current election, and the conduct of the disciplinary and expulsion process all violate the Union's Constitution and Bylaws.

**WHEREFORE,** plaintiffs respectfully requests that the Court:

A.  Grant damages to be proven at trial, including punitive and exemplary damages.

B.  Grant a preliminary injunction and temporary restraining order preventing defendant from expelling Plaintiffs from the Union and preserving the status quo

C.  Grant Plaintiffs' attorney's fees, costs.

D.  Such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        October 20, 2020

Respectfully submitted,

Retu R. Singla
Law Office of Retu Singla,
A Working Peoples Law Center
11 Broadway
Suite 615
New York, NY 10004
(646) 228-4729
rsingla@workingpeopleslaw.com

# Verification

I, Daniel Mello, declare as follows:

1. I am a Plaintiff in the present case.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint

3. If called to testify I would competently testify as to the matters stated herein.

4. The attached Exhibit 1 to the Complaint is a copy of the Constitution and Bylaws for Local 17-18 that was in effect at all times relevant to this proceeding.

5. The attached Exhibit 2 to the Complaint represents the only contents of the expulsion ballot I received in the mail from Local 17-18.

6. The attached Exhibit 3 to the Complaint is a copy of the Voluntary Compliance Agreement I was copied on from the United States Department of Labor.

7. On October 16, 2020 and October 17, 2020 I confirmed with 11 members of Local 17-18 that their expulsion ballots did not contain any statement written by myself, Valentina Gonzalez, Matias Cordoba or Elkin Garcia.

8. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself, my activities, and my intentions are true and correct to the best of my knowledge.

Dated: 10/20/20 20

_____
Daniel Mello

## Verification

I, Valentina Gonzalez, declare as follows:

1. I am a Plaintiff in the present case.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint

3. If called to testify I would competently testify as to the matters stated herein.

4. The attached Exhibit 2 to the Complaint represents the only contents of the expulsion ballot I received in the mail from Local 17-18.

5. On October 16, 2020 and October 17, 2020 I confirmed with 5 members of Local 17-18 that their expulsion ballots did not contain any statement written by myself, Daniel Mello, Matias Cordoba or Elkin Garcia..

6. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself, my activities, and my intentions are true and correct to the best of my knowledge.

Dated: 10/20/20

_Valentina Gonzalez_
Valentina Gonzalez

## **Verification**

I, Elkin Garcia, declare as follows:

1. I am a Plaintiff in the present case.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint

3. If called to testify I would competently testify as to the matters stated herein.

4. The attached Exhibit 2 to the Complaint represents the only contents of the expulsion ballot I received in the mail from Local 17-18.

5. On October 16, 2020 and October 17, 2020 I confirmed with 5 members of Local 17-18 that their expulsion ballots did not contain any statement written by myself, Daniel Mello, Valentina Gonzalez or Matias Cordoba.

6. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself, my activities, and my intentions are true and correct to the best of my knowledge.

Dated: 10/20/2020

Elkin Garcia

## Verification

I, Matias Cordoba, declare as follows:

1.  I am a Plaintiff in the present case.

2.  I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint

3.  If called to testify I would competently testify as to the matters stated herein.

4.  The attached Exhibit 2 to the Complaint represents the only contents of the expulsion ballot I received in the mail from Local 17-18.

5.  On October 16, 2020 and October 17, 2020 I confirmed with 4 members of Local 17-18 that their expulsion ballots did not contain any statement written by myself, Valentina Gonzalez, Daniel Mello or Elkin Garcia..

6.  I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself, my activities, and my intentions are true and correct to the best of my knowledge.

Dated: _10-20-20_

_Matias F. Cordoba_
Matias Cordoba

## **Verification**

I, Alejandra Gomez, declare as follows:

1. I am a Plaintiff in the present case.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint

3. If called to testify I would competently testify as to the matters stated herein.

4. The attached Exhibit 1 to the Complaint is a copy of the Constitution and Bylaws for Local 17-18 that was in effect at all times relevant to this proceeding.

5. The attached Exhibit 2 to the Complaint is a copy of all contents of the expulsion ballot I received in the mail from Local 17-18.

6. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself, my activities, and my intentions are true and correct to the best of my knowledge.

Dated: 10/20/2020

_____
Alejandra Gomez

## <u>Verification</u>

I, Jean Gonzalez, declare as follows:

1. I am a Plaintiff in the present case.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint

3. If called to testify I would competently testify as to the matters stated herein.

4. The attached Exhibit 1 to the Complaint is a copy of the Constitution and Bylaws for Local 17-18 that was in effect at all times relevant to this proceeding.

5. The attached Exhibit 2 to the Complaint represents the only contents of the expulsion ballot I received in the mail from Local 17-18.

6. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself, my activities, and my intentions are true and correct to the best of my knowledge.


Dated: __10-20-20__

_Jean Gonzalez_
Jean Gonzalez