UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

DANIEL MELLO,

             Case No. 20-cv-5035

        Plaintiff,

    -vs-         **DECLARATION IN OPPOSITION TO ORDER**

UNITED PRODUCTION WORKERS   **TO SHOW CAUSE AND**
LOCAL 17-18, et al         **<u>APPLICATION FOR A TRO</u>**

        Defendant.

-------------------------------------------------------------------- X

   ARTHUR Z. SCHWARTZ declares under penalty of perjury as follows:

   1.  I am Special Counsel to United Production Workers Union Local 17-18, a 2300-member union, not affiliated with any national or international union, which represents employees in the food packaging and production industry in the New York Metropolitan Area. I was retained in order to assist the Local in dealing with an election ordered by the US Department of Labor upon the complaint of plaintiffs, who alleged that the last union election was handled improperly. I have a 42-year history litigating cases under the Labor Management Reporting and Disclosure Act (LMRDA), 29 USC Section 401 et seq., largely on the side of plaintiffs.

   2.  The plaintiffs here are four members who were served with charges back in January 2020 because they had posted "allegedly" anti-Semitic literature on a Facebook page and a Whats App posting site, accessible by the union's membership.  When asked I rendered the opinion that the postings (some of which are annexed as Exhibit A) were not protected by the free speech provisions of the LMRDA, found at 29 USC § 411(a)(1). Their comments included statements like: "those of us who are harmed are those who are not Jews, and we have nothing

against the Jews, but if the union is still run by Jews we will be FUCKED;" "We need a president held by the workers, not a president who fixes everything with his Jewish relatives!!!;" "I want to be president, I promise you good insurance, sick days and vacation days, but you have to have a good lawyer and fight for employee rights and take out that Jew that only benefits other Jews with companies.;" No statute protects such hate speech. The one case cited by plaintiffs' counsel in her brief, *Petramale*, which protects robust speech in unions, even slander; but that case does not protect hate speech.

3.  Plaintiffs were given proper notice of the charges, had their trial board elected at a membership meeting as per the union constitution (contrary to what is stated in the complaint), had a full due process trial (the transcript of which is annexed as Exhibit B), got a written decision (Exhibit C, finding them guilty and expelling them) were allowed to appear before the union Executive Board (only two members of which are Jewish) in the first step of their appeal (they appeared via Zoom, since the entire matter unfolded just before the COVID lockdown); and then proceeded to the last two steps in the process , the reading of the charges at a membership meeting , and a vote on the appeal at that meeting (actually, a member vote is required to effectuate discipline whether or not there is an appeal().

4.  Because it is not possible, due to COVID, to have a membership meeting, the union Executive Board decided to have the matter voted on by mail ballot. The plaintiffs were invited to submit a written defense, but their lawyer asked for three weeks to prepare something. The undersigned wrote to the plaintiffs and their counsel and told them that if they did not send a statement the union would post their appeal letter. The ballot which went out had a cover letter explaining what the vote was about, and referred members to the union's web site, which had the Plaintiffs' appeal letter posted. On the advice of the Department of Labor the union held an

informational meeting on Zoom, where each Plaintiff explained their defense. No argument was made in the mailing, or at the meeting, or on the union web site arguing for Plaintiffs' expulsion.

5. Tonight, the ballots are to be opened and counted. Plaintiffs are allowed to watch the count. If they lose, they will stand expelled. If they win, the matter will be over.

6. Nominations for the union election are being conducted on October 21, 2020 (tomorrow). Because Plaintiffs have filed a lawsuit, LMRDA regulations deem them eligible to run. It is hard to understand what "irreparable injury" the count causes to the Plaintiffs since it will actually have no impact unless they lose the upcoming election. Certainly, there is no immediate need (even if the process had been totally unfair and baseless, which it is not) to stop the count. The Second Circuit has addressed this issue squarely in a case where the appeal process was still underway: "Notwithstanding plaintiffs' contrary suggestion, this case bears little resemblance to *Detroy v. American Guild of Variety Artists,* 286 F.2d 75 (2d Cir.1961), which held that exhaustion should not be required "where the internal union remedy [wa]s uncertain and ha[d] not been specifically brought to the attention of the disciplined party, the violation of federal law clear and undisputed, and the injury to the union member immediate and difficult to compensate by means of a subsequent money award." *Id.* at 81." *Fort v. American Federation of State, County and Municipal Employees*, 375 Fed.Appx. 109, 113 (2nd Cir. 2010).

For the reasons above stated, the TRO should be denied.

Dated: New York, New York
      October 20, 2020

                                     *Arthur Z. Schwartz*
                                    Arthur Z. Schwartz
                                    ADVOCATES FOR JUSTICE,
                                    CHARTERED ATTORNEYS

Attorneys for Defendants
225 Broadway, Suite 1902
New York, New York 10007
Tel.:  917-923-8136
Fax: (212) 285-1410
aschwartz@afjlaw.com